**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Michelle L. Gearhart, SBN 263573
P.O. Box 3835
San Luis Obispo, CA  93403-3835
Telephone: (805) 543-0990
gearhart@ammcglaw.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
John McAdams*
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
John.McAdams@pallasllp.com

*Counsel for Petitioners*

**Pro hac vice* applications forthcoming

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of<br><br>Oasis Focus Fund LP and Quadre Investments, L.P.,<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. _____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND......................................................................................4

    A.    Parties to the Foreign Proceeding and the Merger................................4

    B.    The Appraisal Proceeding....................................................................7

    C.    Respondents and the Discovery Sought...............................................7

ARGUMENT ............................................................................................................9

I.    The Application Satisfies Section 1782's Three Statutory Requirements....10

    A.    Respondents Are Found in This District............................................10

    B.    The Discovery Sought Is "For Use" in a Foreign Proceeding............12

    C.    Petitioners Are "Interested Person[s]." .............................................13

II.    The Discretionary *Intel* Factors Weigh in Favor of Granting Discovery. ....14

    A.    *Intel I*: Respondents Are Non-Participants in the Appraisal Proceeding. ........................................................................................14

    B.    *Intel II*: The Grand Court Will Be Receptive to the Requested Discovery. .........................................................................................15

    C.    *Intel III*: The Application Does Not Circumvent Foreign Proof-Gathering Restrictions.......................................................................18

    D.    The Subpoena Is Not Unduly Burdensome. ......................................19

CONCLUSION....................................................................................................22

**Error! No document variable supplied.**

**TABLE OF AUTHORITIES**

Cases

*In re Application of Athos Asia Event Driver Master Fund*,
   No. 1:21-MC-00208-GBD, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) .......................... 17

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................... 17

*de Leon v. Clorox Co.*,
   No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) ............. 19

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ............................................................................... 15, 21

*Facebook, Inc. v. Banana ADS LLC*,
   No. CV 11–03619–YGR (KAW), 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013). 10

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ....................................................................................... 21

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
   No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) ................... 17

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ............................................................................. 17

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
   No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020).. 4, 12, 19

*In Matter of Appl. of Action & Prot. Found.*,
   No. C 14–80076 MISC EMC (LB), 2014 WL 2795832 (N.D. Cal. Jun. 19, 2014). 9

*In re Accent Delight Int'l Ltd.*,
   No. 16-MC-125 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018), *aff'd,* 791 F. App'x 247 (2d Cir. 2019) ....................................................................................... 12

*In re Ambercroft Trading*,
   2018 WL 2867744 (N.D. Cal. Jun. 11, 2018) ......................................................... 21

iii

Error! No document variable supplied.

*In re Appl. of Temporary Servs. Ins. Ltd.*,
  No. 09-MC-48S(Sr), 2009 WL 2843258 (W.D.N.Y. Aug. 28, 2009) .................. 13

*In re Application of Illumina Cambridge Ltd.*,
  2019 WL 5811467 (N.D. Cal. Nov. 7, 2019)........................................................ 15

*In re Application of Athos Asia Event Driver Master Fund*,
  No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ........... 17

*In re Application of Credit Suisse Virtuoso SICAV-SIF In Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund*,
  No. 21-MC-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022) ................. 18

*In re Application of FourWorld Event Opp., LP*,
  No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022) ................. 3, 20

*In re Application of FourWorld Event Opp., LP*,
  No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022)................... 20

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998) ............................................................................... 19

*In re Dickson*,
  No. 20-MC-51 (RA), 2020 WL 550271 (S.D.N.Y. Feb. 4, 2020)......................... 17

*In re FourWorld Event Opportunities, LP*,
  No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021)................................. 17

*In re Gushlak*,
  No. 11–MC–218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ........ 17, 21

*In re Hattori*,
  No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ................ 18

*In re Hopkins*,
  No. 20-MC-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020) ................ 16

*In re Kuwait Ports Auth.*,
  No. 20-MC-00046-ALC (S.D.N.Y. Dec. 13, 2021)............................................... 16

*In re Mireskandari*,
  No. 12-CV-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012)15, 18

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

*In re Mut. Assistance of Local Court of Wetzlar, Germany*,
   No. 17–mc–00078–SKO, 2018 WL 2183966 (E.D. Cal. May 11, 2018)..........9, 21

*In re Nokia Techs. Oy*,
   No. 21MC1487 (MSB), 2022 WL 788702 (S.D. Cal. Mar. 15, 2022) ..................15

*In re Nouvel, LLC*,
   No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ........15

*In re Penner*,
   No. 17-CV-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ...................17

*In re Pioneer Corp. v. Technicolor, Inc.*,
   No. LA CV18-04524 JAK, 2018 WL 4961911 (C.D. Cal. Sept. 12, 2018).....10, 13

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
   No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019)................19, 21

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) ....................................................................17

*In re Republic of Ecuador*,
   No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15,
   2010)...................................................................................................................15, 21

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977)...................................................................................13

*In re Wallis*,
   No. 18-MC-80147-DMR, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ...........2, 9

*In re Wireless Facilities, Inc. Derivatives Litig.*,
   562 F. Supp. 2d 1098 (S.D. Cal. 2008) ...................................................................11

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016)..........16, 21

*In re: Ex parte Application Varian Medical Systems International AG*,
   2016 WL 1161568 (N.D. Cal. May 24, 2016) .........................................................20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ..........................................................................................passim

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

**Error! No document variable supplied.**

*IPCom GMBH & Co. KG v. Apple Inc.*,
   61 F. Supp. 3d 919 (N.D. Cal. 2014) ........................................................................ 17

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) .................................................................................. 11

*LP Digital Solutions v. Signifi Solution, Inc.*,
   921 F. Supp. 2d 997 (C.D. Cal. 2013) ..................................................................... 10

*Minatec Finance S.A.R.L. v. SI Grp. Inc.*, Civ.
   No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .... 21

*Palantir Techs., Inc. v. Abramowitz*,
   415 F. Supp. 3d 907 (N.D. Cal. 2019) ..................................................................... 15

Statutes

28 U.S.C. § 1782 ....................................................................................................... passim

Rules

Local Rule 7-2(b)(1) ......................................................................................................... 1

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

Oasis Focus Fund LP and Quadre Investments, L.P. ("**Petitioners**") respectfully seek an order pursuant to 28 U.S.C. § 1782: (a) granting Petitioners leave to serve subpoenas (the "**Subpoenas**") on Kathleen and Linda Chien (collectively, the "**Respondents**"); (b) directing Respondents to produce the materials described in the Subpoenas within thirty days of service of the Subpoenas; (c) directing Respondents each to appear for a deposition in compliance with the respective Subpoena on a mutually agreeable date within a reasonable time after Respondents' confirmation of the final production of documents in response to the Subpoenas; and (d) granting any and all other relief the Court deems just and proper.

Pursuant to Local Rule 7-2(b)(1), Petitioners state that they cannot presently schedule a date and time for a hearing on this Application, should a hearing be necessary, as the matter has not yet been assigned.

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to Section 1782 to take limited discovery from two individuals residing in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Grand Court**") on July 15, 2022 (the "**Appraisal Proceeding**").  In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their shares in 51job, Inc. ("**51job**" or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ Global Select Market and taken private on May 6, 2022.  Petitioners' shares were forcibly canceled through a merger (the "**Merger**") orchestrated by its majority shareholder, company insiders and affiliates, and private equity funds (the "**Participants**"), the purpose of which was to enable the Participants to acquire 100% control of the Company.  Respondent Kathleen Chien is a co-founder, Chief Operating Officer, shareholder, and, at the time of Merger, the acting Chief Financial Officer of the Company.  She also is one of the "Continuing Shareholders" who rolled over her

Error! No document variable supplied.

shareholding in the Company through the Merger, and one of the Participants who orchestrated the Merger.  Respondent Linda Chien is a Vice President in Investor Relations for the Company.  Through this application, Petitioners seek tailored discovery from Respondents concerning the Merger's negotiation and approval, and the fair value of the Company's shares—core issues in the Appraisal Proceeding.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal.  Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures."  *In re Wallis*, No. 18-MC-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018).  Petitioners' Application meets the statutory requirements of Section 1782: (i) Respondents "reside" or are "found" in this District because they reside in this District, or, at a minimum, have significant contacts with this District; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, as parties to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute.  In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from "nonparticipant[s] in the matter arising abroad."  *Id.*  Respondents are not parties to the Appraisal Proceeding or otherwise subject to the jurisdiction of the Grand Court.  As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*

*Second*, "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

abroad to U.S. federal-court judicial assistance" all support granting Petitioners' Application. *Id.* There is no indication, let alone "authoritative proof," suggesting that the Grand Court might be unreceptive to Section 1782 assistance. To the contrary, several U.S. courts have granted Section 1782 applications for discovery in aid of Cayman litigation, including a court in this District, which granted a Section 1782 application for a different Cayman Islands appraisal proceeding. *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022) (Declaration of Duane L. Loft ("**Loft Decl.**") Ex. 7). As made clear in a recent Cayman Islands appraisal decision, *In the Matter of Nord Anglia Education, Inc.* (Unreported, Grand Court, Kawaley J, 17 March 2020) (Loft Decl. Ex. 11), the Grand Court will accept and consider the evidence sought here given its relevance in determining the fair value of Petitioners' former shares in the Company. Furthermore, the Grand Court in the Appraisal Proceeding is aware that Petitioners may seek discovery through Section 1782, and has placed no restrictions on them doing so.

*Third*, the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. The requested discovery does not implicate any privilege or protection that would make it improper under Cayman Islands law.

*Fourth*, the requested discovery is not "unduly intrusive or burdensome." *Id.* The Subpoenas are tailored to seek evidence addressing the fair value of Petitioners' shares in the Company and the process that the Special Committee (defined below) and the Company undertook to negotiate, approve, and recommend the Merger.

*Finally*, this Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that discovery. Section 1782 is extraterritorial in reach, and courts commonly order discovery of documents located abroad. Nor should the location of the requested discovery alter the Court's discretion. *Illumina*

Error! No document variable supplied.

*Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("concerns about producing documents located outside the United States is largely anachronistic, as . . . documents and information are often located in electronic storage, which can be accessed with equal effort from any location").

### FACTUAL BACKGROUND

**A.    Parties to the Foreign Proceeding and the Merger**

Petitioners Oasis Focus Fund LP and Quadre Investments, L.P. are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding.  *See* Declaration of Jonathan Guy Manning in Support of Petitioners' Application ("**Manning Decl**.") ¶ 6.

The Company was founded in 1998 and is headquartered in Shanghai, the People's Republic of China ("**PRC**").  Manning Decl. ¶ 7.  Ms. Kathleen Chien is one of the co-founders of the Company.  Manning Decl. ¶ 8.  The Company provides integrated human resources services in the PRC.  *Id*.  Before the Merger, the Company's stock was publicly traded on the NASDAQ Global Select Market (through American Depository Shares ("**ADS**")) under the JOBS symbol.  *Id*.

The Merger process first began on September 14, 2020, during the peak of the COVID-19 pandemic, when the Company engaged Rocketeer Management, a "strategic consultant, to explore potential strategic transactions, including possible minority or control transactions, mergers and acquisitions, debt financings or equity financings."  Manning Decl. Ex. 1 ("**Proxy Statement**") at 28.  On September 21, 2020, the Company announced the formation of the special committee (the "**Special Committee**"), comprised of Li-Lang Chen and Eric He, two purportedly independent directors, to consider and negotiate proposed transactions and strategic alternatives. *Id*. at 29.  This process culminated in the Company executing a merger agreement (the "**Original Merger Agreement**") on June 21, 2021.  *Id.* at 37.

4

Error! No document variable supplied.

The Original Merger Agreement was a non-arms'-length transaction to take the Company private by a buyer consortium (the "**Buyer Consortium**"), which included Mr. Rick Yan (the Company's director, CEO and president), three of his associated investment vehicles, and several other funds—who had committed to "work exclusively with each other." *Id.* at i–ii, 33. Moreover, the "Management Continuing Shareholders"—including Respondent Kathleen Chien, Mr. Yan and his three investment vehicles, along with other Company management and related investment vehicles—"expressed unwillingness" to "sell their shares in any other transaction involving the Company," and entered into a support agreement to vote in favor of the Merger. *Id.* at 11, 43. The Original Merger Agreement also did not require approval by a majority of the minority shareholders ("**MoM Protection**"), a common corporate-law device used to protect minority shareholders from controlling shareholders. *Id.* at 35. The Original Merger Agreement provided for consideration of US$79.05 per share and per ADS ("**Original Merger Price**"). *Id.* at 36. This undervalued the Company's shares, which—as late as January 16, 2020—traded at US$91.75, and was called "opportunistic" by some market commentators. Manning Decl. ¶ 10.

Following the execution of the Original Merger Agreement, the Company filed a Schedule 13E-3 form and draft proxy statement with the Securities and Exchange Commission on July 6, 2021. Manning Decl. Ex. 2. However, after that date, the Company went silent for four months, ignoring repeated attempts at correspondence by concerned shareholders. Manning Decl. ¶ 16. Finally, on November 8, 2021, the Company issued a vaguely worded announcement that "certain members of the buyer consortium" had "been in consultation with Chinese regulators on recent regulatory changes in China that may be applicable to the Company and the [Original Merger]." Manning Decl. Ex. 3. It is now clear from the Company's subsequent filings that the "consultations" with the PRC regulators were initiated in early August 2021, by members of the Buyer Consortium after discussions with Mr. Yan and the Company.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

There is a question as to why the Buyer Consortium approached certain PRC regulators (who are not specified in the Proxy Statement or any other materials) in circumstances where that contact ultimately led to a renegotiation of the Original Merger Agreement on terms that were beneficial to the Buyer Consortium at the expense of the unaffiliated minority shareholders.  Manning Decl. ¶ 16.

On January 12, 2022, the Buyer Consortium submitted to the Special Committee a proposal letter that changed the terms of the Original Merger Agreement, offering a dramatically reduced consideration of $57.25 per share—or a *28% decrease* from the Original Merger Price.  *Id*. ¶ 17.  The Special Committee was under *no* obligation to re-negotiate the binding Original Merger Agreement (and should not have done so).  *Id.*  Nonetheless, the Special Committee re-negotiated with the Buyer Consortium, eventually agreeing to "accept" a renegotiated price of $61 per share (the "**Revised Merger Price**")—a 23% decrease from the Original Merger Price and the bare amount necessary for Kroll, LLC—the financial advisor to the Special Committee—to receive its US $500,000 capped incentive fee. *Id* ¶ 18.

On March 1, 2022, the Company executed an amendment ("**Amendment No. 1 to the Original Merger Agreement**"), which, amongst other things, reflected the Revised Merger Price.  Manning Decl. ¶ 19.  Amendment No. 1 to the Original Merger Agreement also did not require MoM Protection.  *Id.* ¶ 21.  In addition, the "go-shop" provision—a clause commonly included in merger agreements, which compels a target company to seek competing bids—was shortened to only two weeks.  *Id.*

On March 29, 2022, the Company issued a proxy statement (the "**Proxy Statement**").  *Id.*  The Proxy Statement explained that "[t]he purpose of the Merger is to enable the Participants to acquire 100% control of the Company."  *Id.* at 9.  Ms. Kathleen Chien was named as one of the Participants.  *Id.* at ii.  The Special Committee recommended that minority shareholders vote in favor of the Merger, even at the Revised Merger Price.  *Id.* ¶ viii–ix, 94.  An Extraordinary General Meeting of the

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

Company's shareholders was held on April 27, 2022, to vote on the Merger.  Given that the so-called "Continuing Shareholders" and their affiliates—being certain members of the Buyer Consortium, other members of the Company's management (including Ms. Kathleen Chien), and the Company's largest shareholder—beneficially held 56.2% of the Company's issued and outstanding shares at the time of the Proxy Statement and executed a support agreement to vote in favor of the Merger, the Merger was unsurprisingly approved.  Manning Decl. ¶ 22 & Proxy Statement at 11–12.  On May 6, 2022, the Merger completed, and the Company was delisted from the NASDAQ Global Select Market.  Manning Decl.  ¶ 23.

## B.    The Appraisal Proceeding

On July 15, 2022, both the Company and Petitioners (along with other dissenting shareholders) initiated proceedings before the Grand Court under Section 238 of the Companies Act of the Cayman Islands ("**Section 238**"), asking the Grand Court to determine the fair value of their former shares in the Company.  These proceedings have been consolidated together as the Appraisal Proceeding.  Manning Decl. ¶ 26.  Petitioners and the other dissenting shareholders will have the opportunity to present (among other things) documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Grand Court.  In determining the fair value of the dissenting shareholders' former shares, the Grand Court will examine both the valuation of the Company and the fairness of the process that led to the Special Committee's and the Company's approval of the Merger.  *See* Loft Decl. Ex. 9, Declaration of Justice Ingrid Mangatal ("**Mangatal Decl.**") ¶ 14.

## C.    Respondents and the Discovery Sought.

Respondent Kathleen Chien is a co-founder, Chief Operating Officer, shareholder, and, at the time of Merger, the acting Chief Financial Officer of the Company.  Proxy at ii, 5.  She joined the Company in 1999, and served as the chief financial officer from 2004 to March 2009.  Proxy at E-2.

7

Error! No document variable supplied.

Ms. Kathleen Chien is identified in the Proxy Statement as one of the "Continuing Shareholders" who rolled over her shareholding in the Company through the Merger.  *Id.* at ii.  Further, in her capacity as a Continuing Shareholder, she "expressed unwillingness" to "sell [her] shares in any other transaction involving the Company," and entered into a support agreement to vote in favor of the Merger.  *Id.* at 43.  As a result of her roll-over, Ms. Kathleen Chien's pre-Merger shareholding of 3.4% increased to 3.86%.  *Id.* at 82, 128.

Additionally, the Proxy Statement also identifies her as one of the Participants. *Id.* at ii.  The Proxy Statement explained that "[t]he purpose of the Merger is to enable the Participants to acquire 100% control of the Company."  *Id.* at 9.  She was involved in negotiations about the Merger as soon as September 16, 2020—only two days after the Company engaged Rocketeer Management "as a strategic consultant to explore potential strategic transactions."  *Id.* at 28.

Respondent Linda Chien is a Vice President in Investor Relations for the Company.  Manning Decl. ¶ 8.

Petitioners' Application seeks discovery from Respondents on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the Original Merger Price and the Revised Merger Price, and the rationale for renegotiating the Original Merger Price; and/or (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Continuing Shareholders and/or the Participants.  The Grand Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence.   Mangatal Decl. ¶ 33.   This requested discovery will accordingly significantly assist the Grand Court in evaluating the Merger and determining the fair value of Petitioners' former shares in the Company.  *Id.* ¶ 40.

Error! No document variable supplied.

# **ARGUMENT**

28 U.S.C. § 1782 permits U.S. district courts to grant discovery for use in a foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from a person that resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person."  *Wallis*, 2018 WL 5304849, at *4.

If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.  No one factor should be given more weight than the others, and no one factor is dispositive. *See In re Mut. Assistance of Local Court of Wetzlar, Germany*, No. 17–mc–00078–SKO, 2018 WL 2183966, at *3 (E.D. Cal. May 11, 2018); *see also In Matter of Appl. of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB), 2014 WL 2795832, at *4 (N.D. Cal. June 19, 2014) (noting that the *Intel* factors "involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives").[1]

---

[1] In addition, in its analysis, the court must consider "the twin aims" of "providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts."  *In re Pioneer Corp. v. Technicolor, Inc.*, No. LA CV18-04524 JAK, 2018 WL 4961911, at *4 (C.D. Cal. Sept. 12, 2018).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

## I.   The Application Satisfies Section 1782's Three Statutory Requirements.

### A.   Respondents Are Found in This District.

For a natural person, Section 1782's requirement that a respondent "reside[s] or be found" in a district is satisfied when the person lives in the district.  *See In re Vahabzadeh*, No. 20-mc-80116-DMR, 2020 WL 5095131, at *2 (N.D. Cal. Aug. 28, 2020) ("First, Mostafa Vahabzadeh resides in San Ramon, California, which is in this district.").   According to a licensed private investigator's database search, both Respondents own and live in a home in this District.  Burtis Decl. ¶ 4.

In addition, there does not appear to be binding precedent in this District on whether the "resides or is found" language in Section 1782 means the court must have personal jurisdiction over the party from whom Petitioners seek discovery.  However, courts in other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal jurisdiction.  *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process.").

On that basis, this Court also has general personal jurisdiction over Respondents.  General jurisdiction can be established by an individual's domicile, *Facebook, Inc. v. Banana ADS LLC*, No. CV 11–03619–YGR (KAW), 2013 WL 1873289, at *3 (N.D. Cal. Apr. 30, 2013) or, in the alternative, his or her "continuous and systematic" contacts with the forum.  *See LP Digital Solutions v. Signifi Solution, Inc.*, 921 F. Supp. 2d 997, 1003 (C.D. Cal. 2013).  Respondents satisfy both standards. *First*, Respondents are domiciled in this District.   "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place,' and [intends] to remain there permanently or indefinitely."  *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986).  Relevant to establishing domicile are the following "number of factors [with] no single factor controlling":

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

[C]urrent residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* at 750.

As noted above, a licensed private investigator's database search revealed that both Respondents own and are current residents of a home in this District. Burtis Decl. ¶ 4. Aside from being listed as owners and residents of a home in this District, Respondent Kathleen Chien has a drivers' license and vehicle registered to Respondents' residence in this District, and also receives her mail at that address. *Id.* Respondents' brother also resides at the same address in this District, has vehicles registered to Respondents' residence in this District, and also receives his mail at Respondents' residence in this District. *Id.*

*Second*, if the Court finds that Respondents are not domiciled in this District, it should find that Respondents maintain "continuous and systematic" contacts here, satisfying the first statutory requirement. In *In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1103 (S.D. Cal. 2008), the court found that a nonresident defendant had "continuous and systematic" contacts with California, even though the nonresident defendant "never intended to return to California once he left" over ten years earlier; the judge cited the non-resident defendant's "property ownership coupled with his other contacts with California, that is, maintaining a driver's license" and frequent visits. *See also id.* (holding it was irrelevant that "the nonresident defendants claim the only reason [defendant] did not cut all ties with California was because his [ex-]wife" resided in California). Respondents thus undoubtedly "reside[ ]" or are "found" in this District.

Respondents also are properly subject to discovery of all responsive documents in their possession, custody, or control, notwithstanding that the evidence may be

---

11

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

located abroad.  *See, e.g.*, *Illumina*, 2020 WL 820327, at *10 (declining to "limit production to documents physically located within the United States" and explaining that "concerns about producing documents located outside the United States is largely anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location"); *see also Valle Ruiz*, 939 F.3d at 532–33 (holding that "§ 1782 can be used to reach documents stored overseas" and "the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure" which, in turn, "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control.").[2]

**B.    The Discovery Sought Is "For Use" in a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery may be submitted to and relied on by the foreign tribunal. "Thus, applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant."  *Qualcomm Inc. for an Order pursuant to 28 U.S.C. § 1782*, No. 18-MC-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").  An applicant is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceeding.  *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged

---

[2] *See also In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ("[T]he plain language of Section 1782 imposes no geographical limit on the production of documents[; t]o the contrary, [it] explicitly empowers courts to allow discovery to be taken and produced in accordance with the Federal Rules of Civil Procedure . . . and discovery under the Federal Rules is indisputably broad and can extend to materials located outside of the United States.").

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

**Error! No document variable supplied.**

1   to involve themselves in technical questions of foreign law relating to . . . the
2   admissibility before [foreign] tribunals of the testimony or material sought.").

3         Here, the Grand Court will accept and consider any relevant evidence submitted
4   by the parties, so long as it is lawfully obtained within the jurisdiction in which it
5   originates and not otherwise subject to an exclusionary rule of evidence. *See* Mangatal
6   Decl. ¶ 33. Further, in appraisal proceedings, the Cayman Islands Court of Appeal has
7   emphasized the need to consider all facts and matters that may have a bearing on the
8   determination of fair value. *Id.* ¶¶ 20–23 (citing Mangatal Decl. Ex. B, *Qihoo 360*
9   *Technology Co., Ltd.* (Unreported, Cayman Islands Court of Appeal, October 9, 2017,
10  CICA at 19) ("The sole task of the Court is to determine the fair value of the dissenters'
11  shares. To do that, it needs full information.")). The Grand Court will accept and
12  consider the requested discovery here, given its relevance in determining the fair value
13  of Petitioners' former shareholdings in the Company. *Id.* ¶¶ 38–40. Finally, the
14  requested discovery is intended for use in the Appraisal Proceeding, which was filed
15  on July 15, 2022. Manning Decl. ¶ 26. The requested discovery is therefore plainly
16  "for use" in the Appraisal Proceeding, and the Application thus satisfies Section
17  1782's second statutory requirement. *See In re Appl. of Temporary Servs. Ins. Ltd.*,
18  No. 09-MC-48S(Sr), 2009 WL 2843258, at *2 (W.D.N.Y. Aug. 28, 2009) (finding
19  discovery sought for use in Cayman Islands proceedings satisfied this prong).

20        **C.     Petitioners Are "Interested Person[s]."**

21        "Litigants are included among, and may be the most common example of, the
22  'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Pioneer*, 2018
23  WL 4961911, at *5 ("An 'interested person' includes, but [is] not limited to, parties in
24  a foreign proceeding." (citing *Intel*, 542 U.S. at 256)). Petitioners are claimants in the
25  Appraisal Proceeding, Manning Decl. ¶ 2, and thus an "interested person" under
26  Section 1782.

27

28

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

## II. The Discretionary *Intel* Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, the district court should consider, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264. Each of the *Intel* factors weighs in favor of granting the Application.

### A. *Intel I*: Respondents Are Non-Participants in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

As explained in the accompanying Manning Declaration, Respondents are not parties to the Appraisal Proceeding, and therefore will not be subject to party discovery there. Manning Decl. ¶ 29. Further, because Respondents reside in the United States, the Grand Court will not have jurisdiction to compel discovery from them. *Id.* Moreover, that Respondent Ms. Kathleen Chien is an officer of the Company, and Respondent Ms. Linda Chien an employee of the Company, does not preclude this court from granting discovery under Section 1782. The Ninth Circuit has held that "[a] corporation is a separate legal entity from its employees, including its president." *In re Premises Located at 840 140th Avenue NE, Bellevue, Washington*, 634 F.3d 557, 567 (9th Cir. 2011) (rejecting argument that a company and its president were the same because "the subject of the subpoena is Global Fishing, which is not a party to the underlying criminal case in Russia against Gontmakher").

Accordingly, this first *Intel* factor weighs in favor of granting the Application. *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("some parties here are not party to the foreign litigation, and based on

---

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

the parties' submissions of expert testimony, the Court has some doubt that the requested discovery is or will become available in the foreign courts"); *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in the international arbitration, and therefore this factor weighs in the [petitioner's] favor."); *In re Mireskandari*, No. 12-CV-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012) (first *Intel* factor satisfied when respondent was "not subject to the English court's jurisdiction").

**B.    *Intel II*: The Grand Court Will Be Receptive to the Requested Discovery.**

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate it is receptive to Section 1782 assistance.   "[W]hen evaluating whether foreign tribunals would accept U.S. assistance," courts do not look for proof that the foreign tribunal will accept the evidence; to the contrary, they "look for 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782.'"  *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)) (emphasis in original).  Accordingly, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782.  *See In re Nokia Techs. Oy*, No. 21MC1487 (MSB), 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022) ("[I]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery.") (quoting *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019)); *see also In re Application of  Illumina Cambridge Ltd.*, 2019 WL 5811467, at *4 (N.D. Cal. Nov. 7, 2019)  ("The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence."); *In re: Application of Joint Stock Co.*

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

*Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("[C]ourts look for 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.'") (citation omitted).

The Grand Court will consider any evidence that has a bearing on determining the fair value of the Company's shares. *See* Mangatal Decl. ¶ 33. Indeed, the CICA has underscored that third-party materials are relevant in Section 238 proceedings, reasoning:

> [I]f third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company . . . . After all, the question of fair value is closely related to the question of what a willing buyer and a willing seller would exchange for the shares of the Company (or for the Company as a whole): and that question is closely related to valuations conducted within the market generally.

Mangatal Decl. ¶ 24 (citing Mangatal Ex. A (*Re Qunar Cayman Islands Ltd.* (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) at ¶ 60)). This includes discovery obtained under Section 1782, including pre-trial deposition testimony, which the CICA has explicitly held "is a right conferred by U.S. law—it is not a right conferred by, or to be withheld under, Cayman law." Mangatal Decl. Ex. C (*Lyxor Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd.* [2009 CILR 553] at ¶ 57 (emphasis added)). Accordingly, the Grand Court has made procedural orders in Cayman Islands appraisal proceedings that acknowledge and accommodate discovery obtained through Section 1782. Mangatal Decl. ¶¶ 31–32. Further, multiple U.S. courts have recognized that Cayman Islands' courts are receptive to evidence obtained through Section 1782,[3] including a court in this District, which granted document and

---

[3] *See also In re Kuwait Ports Auth.,* No. 20-MC-00046-ALC, slip op. at *10 (S.D.N.Y. Dec. 13, 2021) ("The record contains no clear and express directive under Cayman law or policy that would demonstrate a lack of receptivity to judicial assistance from federal courts in the United States."); *In re Hopkins,* No. 20-MC-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought by [petitioner]."); *In re Dickson,* No. 20-MC-51 (RA), 2020 WL 550271, at *1 (Continued...)

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

deposition discovery for use in a different Cayman Islands appraisal proceeding.  *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) (Loft Decl. Ex. 5).  Three other district courts also recently granted Section 1782 applications for both document discovery and a deposition for use in different Cayman Islands appraisal proceedings.  *See In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGS, ECF No. 6 (D. Del. July 29, 2021) (Loft Decl. Ex. 4); *In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *3 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driver Master Fund*, No. 1:21-MC-00208-GBD, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) (same) (Loft Decl. Ex. 3).

Thus, in the Appraisal Proceeding, Petitioners have the right to acquire and present the Requested Discovery to the Grand Court in support of its claims.  Mangatal Decl. ¶ 32.  Moreover, the Grand Court will accept and consider the evidence given its significance in determining the fair value of the Petitioners' shares in the Company.  Mangatal Decl. ¶ 40; *see IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 924 (N.D. Cal. 2014) (rejecting the argument that subpoena issued pursuant to Section 1782 should be quashed because there was a "low probability" the information would be relevant to the foreign proceeding).

---

(S.D.N.Y. Feb. 4, 2020); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman Islands' courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding the Grand Court "is open to receiving § 1782 discovery"); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012); *In re Gushlak*, No. 11–MC–218 (NGG), 2011 WL 3651268, at *5 (E.D.N.Y. Aug. 17, 2011) ("Second, Respondents have not presented the court with any authoritative proof that the Grand Court would not be receptive to the discovery requested"); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman Islands proceedings).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

Moreover, here, the Grand Court has been informed that the dissenting shareholders may bring foreign discovery applications, including under Section 1782. Manning Decl. ¶ 27. The Grand Court did not place any restrictions on dissenting shareholders from doing so. *Id.* Therefore, the second *Intel* factor weighs heavily in favor of granting the Application.

**C.     *Intel III*: The Application Does Not Circumvent Foreign Proof-Gathering Restrictions.**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "[P]roof-gathering restrictions are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials." *In re Application of Credit Suisse Virtuoso SICAV-SIF In Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund*, No. 21-MC-80308-JCS, 2022 WL 1786050, at *11 (N.D. Cal. June 1, 2022) (quoting *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015)) (emphasis in original); *see also In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021) ("The question under this prong is whether the foreign court would be affronted by the applicant's resort to U.S. discovery."); *Siemens AG*, 2013 WL 5947973, at *3.

Moreover, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In re Ex Parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022); *see also In re Mireskandari,* No. 12-CV-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012) ("Notwithstanding, much of the parties' arguments to this Court relate to whether the evidence would be admissible in the foreign proceedings and, even less important to this Court, whether the evidence provides a substantive basis for overturning the Tribunal's decision. Such

Error! No document variable supplied.

issues are appropriately suited for the English courts."). In addition, there is no "quasi-exhaustion requirement," i.e., a requirement that Petitioners first seek the discovery in the foreign court. *Illumina*, 2020 WL 820327, at *6 (no exhaustion requirement); *de Leon v. Clorox Co.*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign tribunal); *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782.").

The requested discovery here does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, the Grand Court is receptive to evidence obtained under Section 1782, *supra* Section II.B, expects parties to obtain the evidence they believe is necessary to prosecute their case, and there is no requirement to obtain permission from the Grand Court before seeking relevant evidence abroad. Mangatal Decl. ¶ 32. Moreover, the Cayman Islands Court of Appeal has expressly held that "prima facie a party who can invoke the jurisdiction of the US District Court under § 1782 may choose to do so." Mangatal Decl. Ex. C (*quoting Lyxor Asset Management S.A. v. Phoenix Meridian Equity Ltd.* [2009 CILR 553] at ¶ 57). And the Grand Court in the Appraisal Proceeding is aware that the dissenting shareholders may bring Section 1782 applications and placed no restrictions on their ability to do so. Manning Decl. ¶ 27. The third *Intel* factor, therefore, also weighs in favor of granting the Application.

## D.    The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *In re: Ex parte*

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

*Application Varian Medical Systems International AG*, 2016 WL 1161568, at *5 (N.D. Cal. May 24, 2016); *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("the discovery sought is not unduly intrusive or burdensome, and it appears reasonable and proportionate to the scope of the Luxembourgish and French actions").   Importantly, "Conclusory, unsupported statements of expense and burden are insufficient to demonstrate why the requested discovery is objectionable." *Nouvel*, 2022 WL 3012521, at *5.

Here, the Subpoena is narrowly tailored with respect to the time period and subject matter of the requests.  The requested discovery is substantially the same in scope as the Section 1782 discovery ordered for use in a different Cayman appraisal proceeding.  *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022) (Loft Decl. Ex. 7).  In that case, the respondent agreed to provide to the petitioners "all documents Respondent provided to [the company in the appraisal proceeding]," "a privilege log of documents withheld or redacted for privilege," and "submit to a deposition under the Federal Rules of Civil Procedure." *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022) (Stipulated Order) (Loft Decl. Ex. 8).

*First*, the Subpoena is limited to documents and information directly relevant to two issues in the Appraisal Proceeding—(i) the fairness of the Original Merger Price and the Revised Merger Price, and the rationale for renegotiating the Original Merger Price; and/or (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Continuing Shareholders and/or the Participants.  These issues will be central in the Appraisal Proceeding. *See* Mangatal Decl. ¶¶ 20–23.

*Second*, the discovery requests are also temporally limited to a two-year period of July 1, 2020 – April 27, 2022—being approximately two months prior to the Company engaging a strategic consultant to explore potential transactions, to the date

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

of the Extraordinary General Meeting of shareholders that approved the Merger. *PJSC*, 2019 WL 291673, at *7 ("The delimited timeframe and subject matter distinguish Uralkali's application from the sort of open-ended petitions that courts have rejected as overbroad."); *see also In re Gushlak*, No. 11–MC–218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (a Section 1782 request, like any discovery request, is "reasonably calculated to lead to relevant matter if there is any possibility that the information sought may be relevant to the subject matter of the action").[4]

*Third*, Petitioners are willing to meet and confer with Respondents to address any scope or burden concerns. If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondents "from bringing a motion to quash or modify" the discovery sought. *Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7.[5]

////

////

////

---

[4] *See also First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) (finding subpoena reasonable that only sought documents concerning "precise subject matter of the underlying [proceedings]"); *Minatec Finance S.A.R.L. v. SI Grp. Inc*., Civ. No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008); *Local Court of Wetzlar, Germany*, 2018 WL 2183966, at *4.

[5] *See also In re Republic of Ecuador*, 2010 WL 3702427, at *5; *In re Ambercroft Trading*, 2018 WL 2867744, at *5 (N.D. Cal. Jun. 11, 2018). If the Court finds any merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Error! No document variable supplied.

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioners respectfully request that the Court grant the Application.

Dated: March 6, 2023

By:   */s/ Michelle L. Gearhart*

**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Michelle L. Gearhart
P.O. Box 3835
San Luis Obispo, CA  93403-3835
Telephone: (805) 543-0990
gearhart@ammcglaw.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
John McAdams*
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
John.McAdams@pallasllp.com

*Counsel for Petitioners*

**Pro hac vice* applications forthcoming

22

Error! No document variable supplied.